2009 WY 149

**Keith Allan LEYVA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–09–0034.

Supreme Court of Wyoming.

Dec. 9, 2009.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N.

Kerin, Appellate Counsel; Wyoming Public Defender Program.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Paul S. Rehurek, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Keith Allan Leyva entered a conditional plea of no contest to one count of possessing methamphetamine with intent to deliver, reserving the right to appeal the district court's denial of his motion to suppress. Leyva maintains the evidence should have been suppressed because no reasonable suspicion existed to detain him for a dog sniff of his vehicle following the conclusion of a traffic stop. We disagree and affirm the district court's suppression ruling.

## ISSUE

[¶ 2] Leyva presents this single issue for our review:

> Did the trial court err in denying Appellant's motion to suppress evidence obtained from the detention of Appellant and search of Appellant's car?

## FACTS

[¶ 3] Shortly after midnight on April 20, 2008, Trooper Joel Eldred of the Wyoming Highway Patrol was traveling north on I–25 in Converse County when he noticed a vehicle approaching him from behind at a high rate of speed. Using his rear radar unit, the trooper clocked the oncoming vehicle traveling at 100 miles per hour in a 75 mile-per-hour speed zone. Trooper Eldred decreased his speed to about 45 miles per hour. When the vehicle got within 200 feet, it reduced its speed and followed behind the trooper for a couple of miles and then slowly passed the patrol car. Trooper Eldred activated his lights and stopped the vehicle.

[¶ 4] Trooper Eldred contacted Leyva, the driver of the car, and his passenger. The

trooper informed Leyva of the reason for the stop and obtained Leyva's driver's license, registration, and proof of insurance. When the trooper asked where they were traveling from, both said they were coming from a funeral in Greeley, Colorado, and that they were heading to Casper. Trooper Eldred looked inside the car, but did not see anything that indicated funeral attendance. As he conversed with the couple, Trooper Eldred noticed a heavy odor of air freshener emanating from inside the car. The trooper also noticed that Leyva appeared fairly nervous and when asked a question, Leyva looked at the passenger who would then answer the question. A few minutes into the traffic stop, Trooper Sheldon Poage arrived on the scene.

[¶ 5] Trooper Eldred had Leyva accompany him to his patrol car for the purpose of issuing a traffic citation, and Trooper Poage made contact with the passenger. While in the patrol car, considerable confusion arose concerning where Leyva lived. Leyva indicated Casper was "home," but his driver's license listed a Gillette address. Initially, Leyva said he was living in a Casper motel, but later stated he moved out of the motel. When asked about the funeral, Leyva stated it was his uncle's funeral, but could not provide the uncle's name. Leyva also said that he and the passenger left Casper the day before to attend the funeral. Leyva indicated that the passenger was his girlfriend, and that they had been dating for a period of time. Upon questioning, the passenger also was unable to provide the uncle's name. Additionally, she claimed, contrary to Leyva's statements, that they left Casper early that morning for the uncle's funeral, the couple recently started dating, and Leyva had been residing at a friend's trailer.

[¶ 6] Trooper Eldred briefly discussed the inconsistencies and the situation with Trooper Poage. The trooper then returned Leyva's driver's license and other documents, issued him a citation for speeding, and told him he was free to leave. As Leyva walked back to his car, Trooper Eldred requested permission to ask him some additional questions. Leyva agreed. After asking a few questions, the trooper inquired about the presence of drugs, cash, or guns in the car. Leyva denied having such items. Trooper Eldred then requested permission to search the car, which Leyva denied. At that point, the trooper advised Leyva he was going to be detained for a drug dog.

[¶ 7] Trooper Eldred permitted Leyva to sit in his vehicle pending the arrival of the canine unit from Douglas. After waiting approximately 23 minutes, Leyva pulled away from the side of the road and sped off down the highway, with the troopers in pursuit. A few seconds later, the troopers noticed an object being thrown from the passenger window. Trooper Poage stopped to retrieve the object, which turned out to be a bag containing methamphetamine, and resumed the pursuit. After a 3- to 4-mile chase, Leyva pulled over and stopped. The troopers immediately placed Leyva and his passenger under arrest. Following the arrests, Trooper Poage conducted an inventory of the car's contents, which revealed additional methamphetamine and drug distribution paraphernalia. A further search of the car was conducted the next day pursuant to a search warrant.

[¶ 8] Based on the items found in the bag and car, the State charged Leyva with one count of felony possession of methamphetamine and one count of possession of methamphetamine with intent to deliver as proscribed by Wyo. Stat. Ann. § 35–7–1031(a)(i) and (c)(ii) (LexisNexis 2009). The State later charged Leyva with attempting to elude a police officer under Wyo. Stat. Ann. § 31–5–225(a) (LexisNexis 2009), a misdemeanor. Leyva filed a motion to suppress the methamphetamine and other drug-related evidence, claiming the evidence was the product of an unlawful search and seizure under both the United States and Wyoming Constitutions. Following a hearing in which the district court heard the testimony of Trooper Eldred and viewed a video of the traffic stop and associated events, the district court denied the suppression motion, concluding, among other things, that reasonable suspicion existed justifying Leyva's further detention. Thereafter, pursuant to a plea agreement, Leyva entered a conditional plea of no contest to the possession with intent to deliv-

er charge, and the State dismissed the other charges. In accordance with the plea agreement, the district court imposed a prison sentence of five to seven years. This appeal followed.

## STANDARD OF REVIEW

[¶ 9] The standard employed for reviewing a challenge to a suppression ruling is well established:

When reviewing a district court's decision on a motion to suppress evidence, we defer to the court's findings on factual issues unless they are clearly erroneous. *Campbell v. State*, 2004 WY 106, ¶ 9, 97 P.3d 781, 784 (2004). We view the evidence in the light most favorable to the district court's decision because it is in the best position to assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions. *Id.* The constitutionality of a particular search or seizure, however, is a question of law that we review de novo. *Id.*

*Kunselman v. State*, 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (2008) (quoting *Hembree v. State*, 2006 WY 127, ¶ 7, 143 P.3d 905, 907 (2006)); *see also Feeney v. State*, 2009 WY 67, ¶ 9, 208 P.3d 50, 53 (Wyo.2009); *Seymour v. State*, 2008 WY 61, ¶ 17, 185 P.3d 671, 676 (2008).

## DISCUSSION

[¶ 10] Leyva assails the district court for denying his motion to suppress the drug evidence. Leyva does not contest the initial stop or his subsequent consent to additional questioning. Rather Leyva's complaint focuses solely on the district court's conclusion that Trooper Eldred had reasonable suspicion of criminal activity to detain him for a drug sniff after the traffic stop had concluded.

[¶ 11] Initially, we note that Leyva's challenge to the district court's suppression ruling is premised on both Article 1, § 4 of the Wyoming Constitution and the Fourth Amendment to the United States Constitution. However, the state constitutional argument presented by Leyva does not constitute a "precise, analytically sound approach" required for this Court to undertake an independent state constitutional analysis. *See Feeney*, ¶ 11, 208 P.3d at 53; *Vassar v. State*, 2004 WY 125, ¶ 14, 99 P.3d 987, 993 (Wyo. 2004); *Morgan v. State*, 2004 WY 95, ¶ 20, 95 P.3d 802, 808 (2004). Essentially, Leyva's argument is disjointed and consists of little more than a recitation and summary of passages from *Vasquez v. State*, 990 P.2d 476 (Wyo.1999), and *O'Boyle v. State*, 2005 WY 83, 117 P.3d 401 (2005), and an assertion, unsupported by any cogent analysis, that his continued detention was constitutionally unreasonable. We therefore decline to consider it.

[¶ 12] We now switch our attention to whether Leyva's continued detention for a canine sniff of his vehicle violated the Fourth Amendment. The law is well settled that a law enforcement officer may detain a motorist if the officer has an objectively reasonable suspicion that the person is engaged in criminal activity. *Barch v. State*, 2004 WY 79, ¶ 9, 92 P.3d 828, 832 (2004); *Damato v. State*, 2003 WY 13, ¶ 13, 64 P.3d 700, 706 (2003); *see also United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir.2001). The existence of objectively reasonable suspicion of criminal activity is determined by evaluating the totality of the circumstances. *Damato*, ¶ 16, 64 P.3d at 707. The "whole picture" must be considered; "[c]ommon sense and ordinary human experience are to be employed, and deference is to be accorded a law enforcement officer's ability to distinguish between innocent and suspicious actions." *Id.* (citing *United States v. Wood*, 106 F.3d 942, 946 (10th Cir.1997)).

[¶ 13] Looking at the whole picture, along with rational inferences, we agree with the district court's legal conclusion that Trooper Eldred possessed reasonable suspicion to detain Leyva. The factors supporting the trooper's reasonable suspicion included: Leyva's reluctance to pass the patrol car even though Trooper Eldred slowed his traveling speed to well below the posted speed limit; the strong odor of air freshener; the inability of Leyva and the passenger to provide the name of the uncle whose funeral they supposedly attended; the inconsistent answers pro-

vided by Leyva and his passenger concerning when they departed from Casper for the uncle's funeral, their dating history, and Leyva's place of residence; and Leyva's visible nervousness during the stop. Although any of these factors alone may not have justified the detention, we believe in the aggregate they provided Trooper Eldred with an objectively reasonable basis for suspecting that criminal activity was afoot, thus warranting Leyva's further detention pending the arrival of the canine unit. Accordingly, we hold that the detention did not violate the Fourth Amendment to the United States Constitution and that, consequently, the district court properly denied Leyva's motion to suppress.

[¶ 14] Affirmed.